### SALLER v. UNITED STATES.
### No. 619.

District Court, E. D. Pennsylvania.
May 20, 1940.

Wolf, Block, Schorr & Solis-Cohen, of Philadelphia, Pa., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Ruppert Bingham, and Edward H. Horton, Sp. Assts. to the Atty. Gen., and J. Cullen Ganey, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

■ This case arises upon a motion to dismiss the complaint and, therefore, the facts alleged therein must be accepted as true for the purposes of the present decision. Prior to the effective date of the processing tax on rye, imposed under the Agricultural Adjustment Act of 1933, 7 U. S.C.A. § 601 et seq., plaintiff had contracted to purchase the output of rye whiskey of the Harford Pure Rye Distillers, Inc., at a fixed price base, which agreement did not by its terms permit the addition to the price of any taxes. Subsequent to the imposition of the aforementioned tax, the processor-vendor added to the bills for deliveries of whiskey after such date the amount of processing taxes involved in the processing of rye contained in the whiskey. Plaintiff paid these amounts to his vendor, totalling $5,238.10, under Section 18 of the Agricultural Adjustment Act, 7 U.S.C.A. § 618. In turn, the vendor paid the amounts involved as processing taxes to the Collector of Internal Revenue. Plaintiff resold the whiskey thus purchased at prices which did not include these additional sums paid. Thus, he bore the burden of the taxes involved. (Par. 4.)

In United States v. Butler, 1936, 297 U. S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, and Rickert Rice Mills Inc. v. Fontenot, 1936, 297 U.S. 110, 56 S.Ct. 374, 80

L.Ed. 513, it was held that the taxes imposed by the Agricultural Adjustment Act were unconstitutional and void. Thereafter, plaintiff recovered $4,365 on a claim for payment arising under Section 602 of the Revenue Act of 1936, 7 U.S.C.A. § 642, because of whiskey held for sale at the first moment of January 6, 1936. (Par. 5.) Plaintiff also filed a claim for refund, under Section 903 of the Revenue Act, 7 U.S.C.A. § 645, for $5,238.10 representing the additional amounts paid by virtue of Section 18 of the Agricultural Adjustment Act, allegedly as processing taxes to the United States through the agency of the processor-vendor, allowing, however, a credit for $4,-365, thus leaving a balance of $873.10. (Par. 5.) The Commissioner of Internal Revenue disallowed the claim on the ground that under Title VII of the Revenue Act of 1936, 7 U.S.C.A. § 644 et seq., taxes paid under the Agricultural Adjustment Act could be recovered only by the person who paid such taxes to the United States and plaintiff was not that person. (Par. 7.) Plaintiff thereupon petitioned the United States Processing Tax Board of Review (Par. 7.), which dismissed the petition on the ground that plaintiff had not paid any processing taxes to the United States within the meaning of Title VII of the Revenue Act of 1936. (Plaintiff's brief, pp. 2, 3.)

Alleging that the additional amounts paid to his vendor were paid as taxes as required by Section 18 of the Agricultural Adjustment Act (Par. 8.), plaintiff brings this action against the United States to recover the sum of $873.10 with interest, averring that this court has jurisdiction under either or both of the following statutes: (a) the Revenue Act of 1936, Title VII, 7 U.S.C.A. § 644 et seq.; (b) the Judicial Code, Section 24(20) as amended, 28 U.S.C.A. § 41(20). (Par. 1.)

Defendant moves to dismiss the complaint on the ground that this court is without jurisdiction over the subject matter.

■ In view of the numerous statutory provisions involved herein, for purposes of clarity it would appear desirable to summarize the legislative background of the case. To obtain revenue to further its purposes, the Agricultural Adjustment Act of 1933 imposed the following taxes: (1) A processing tax on the first domestic processing of enumerated basic agricultural commodities, to be paid by the processor, Section 9, 48 Stat. 35, 7 U.S.C.A. § 609;

(2) Compensating taxes (a) on the first domestic processing of any competing commodity which the Secretary of Agriculture finds placing processors of basic agricultural commodities at a disadvantage due to the competitive advantage otherwise enjoyed because of the tax imposed upon the basic commodity, Section 15(d), 48 Stat. 39, 7 U.S.C.A. § 615(d), and (b) on any article processed or manufactured wholly or in chief value from any commodity with respect to which a processing tax is, in effect, imported into the United States from any foreign country or possession of the United States to which the act does not apply, Section 15(e), 48 Stat. 40; 7 U.S.C.A. § 615(e), (3) A floor stocks tax on articles already processed wholly or in chief value from any commodity upon which a processing tax is levied and which are held for sale or other disposition on the date that the processing tax with respect to that commodity takes effect, Section 16, 48 Stat. 40, 7 U.S.C.A. § 616. Section 18 of the Act, 48 Stat. 41, 7 U.S.C.A. § 618, provided:

"(a) If (1) any processor, jobber, or wholesaler has, prior to the date a tax with respect to any commodity is first imposed under this title [chapter], made a bona fide contract of sale for delivery on or after such date, of any article processed wholly or in chief value from such commodity, and if (2) such contract does not permit the addition to the amount to be paid thereunder of the whole of such tax, then (unless the contract prohibits such addition) the vendee shall pay so much of the tax as is not permitted to be added to the contract price.

"(b) Taxes payable by the vendee shall be paid to the vendor at the time the sale is consummated and shall be collected and paid to the United States by the vendor in the same manner as other taxes under this title [chapter]. In case of failure or refusal by the vendee to pay such taxes to the vendor, the vendor shall report the facts to the Commissioner of Internal Revenue who shall cause collections of such taxes to be made from the vendee."

In United States v. Butler, supra, the Agricultural Adjustment Act was held unconstitutional. Thereafter, in the Revenue Act of 1936, Congress enacted provisions authorizing refunds of amounts collected under the invalid Act. Title IV, Section 602(a), of the Revenue Act provides: "There shall be paid to any person who,

at the first moment of January 6, 1936, held for sale or other disposition (including manufacturing or further processing) any article processed wholly or in chief value from a commodity subject to processing tax, an amount computed as provided in subsection (b), except that no such payment shall be made to the processor or other person who paid or was liable for the tax with respect to the articles on which the claim is based."

Section 602(b) prohibits recovery in excess of the amount of the burden of the tax with respect to the article which was shifted to the claimant in the price he paid for the article and in excess of that part of this burden which the claimant has not passed on to his vendees. Section 602 merely is a gratuity extended by Congress to certain dealers who bore the burden of taxes in increased purchase prices but who did not directly pay any tax under the Agricultural Adjustment Act. Seligman's Inc. v. United States, D.C., W.D.La.1939, 30 F.Supp. 895.

Title VII of the Revenue Act deals explicitly with refunds of taxes collected under the Agricultural Adjustment Act. Section 902 thereof 7 U.S.C.A. § 644, provides:

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount *paid by or collected from any claimant as tax* under the Agricultural Adjustment Act [this chapter], unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906 [648 of this title], as the case may be—

"(a) That he bore the burden of such tax and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, * * *." (Italics supplied.)

Section 905, 7 U.S.C.A. § 647, dealing with the jurisdiction of courts, declares: "Concurrent with the Court of Claims, the District Courts of the United States (except as provided in section 906 [648] of this title) shall have jurisdiction of cases to which this title applies, regardless of the amount in controversy, if such district courts would have had jurisdiction of such cases but for limitations under the Judicial Code, as amended, on jurisdiction of such courts based upon the amount in controversy. * * *"

Section 906, 7 U.S.C.A. § 648, dealing with procedure on claims for refunds of processing taxes, reads in part: "Notwithstanding any other provision of law, no suit or proceeding * * * shall be brought or maintained in any court for the refund of any amount paid or collected as processing tax * * * except as provided in this section. * * *"

Section 906 provides further that, in the case of processing taxes, the Commissioner shall allow or disallow claims, a dissatisfied claimant being granted the right to petition the Board of Review for a hearing on the merits of his claim. Finally, under this section, decisions of the Board are made subject to judicial review by the United States Circuit Courts of Appeal.

Section 24(20) of the Judicial Code, 28 U.S.C.A. § 41(20), commonly known as the Tucker Act, and to which Section 905 of the Revenue Act apparently refers, gives the district courts original jurisdiction in suits against the United States "* * * of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, * * *."

The refunding provisions of Title VII of the Revenue Act alone would appear to provide for claims "founded upon * * * any law of Congress". In that event, the conditions imposed by Section 902 of the Revenue Act must govern. Whatever might have been the independent operation of the Tucker Act had Title VII of the Revenue Act of 1936 not been enacted, and with respect to the instant case this is not clear, since the latter statute purports to embody a complete system for refunds of amounts collected as taxes under the Agricultural Adjustment Act, the scope of the jurisdiction conferred by it upon this court must be regarded as controlling.

In its essence, the issue now to be decided is whether or not, by virtue of the additional payments made to his vendor under Section 18 of the Agricultural Adjustment Act, "any amount [was] paid by or collected from [plaintiff] as tax under the Agricultural Adjustment Act [this chapter]" and, if so, was the tax one other than a processing tax? Plaintiff argues: first, that, through the agency of the processor-vendor, he paid taxes to the United States;

secondly, that the action of the Commissioner and that of the Processing Tax Board of Review demonstrate that the tax paid was not a processing tax. Therefore, it is contended that some other type of Agricultural Adjustment Act tax was paid to the United States by plaintiff and, under Sections 902 and 905 of the Revenue Act of 1936, this court has jurisdiction of suits against the United States to recover the amounts involved. For reasons hereinafter noted, this court is unable to agree with the foregoing contention.

Section 902 of the Revenue Act of 1936 limiting refunds to "any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act [this chapter]" has been construed to restrict refunds to persons who have paid directly to the United States amounts imposed as tax under the Agricultural Adjustment Act; F. & F. Laboratories, Inc. v. Commissioner, 7 Cir., 1939, 104 F.2d 563, 565, 566; and it has been held that a vendee who has paid additional sums to his vendor because of Section 18 of the Agricultural Adjustment Act is not such a taxpayer within the meaning of the Revenue Act; Zinsmaster Baking Co. v. Commissioner, 8 Cir., 1940, 109 F.2d 738. Moreover, it would appear that it was for this very reason that, in the present case, plaintiff's claim for refund failed to secure administrative approval. In the Zinsmaster case, supra, some of the contracts involved were entered into prior to the effective dates of the taxes imposed and, as in the instant case, were silent on the question of added payments because of any processing taxes. As here, petitioner paid the contract prices plus the processing taxes, noted separately as such, to the processors who, in turn, paid the amounts to the Collector of Internal Revenue. In denying petitioner the status of a taxpayer entitled to any refunds under Title VII of the Revenue Act, the Eighth Circuit Court of Appeals declared:

"* * * the refund statutes applicable here restricted refunds to persons who had been liable for and had paid directly to the United States amounts imposed as tax under the Agricultural Adjustment Act." 109 F.2d at page 739.

"The fact that the payments of the amounts separately and specially noted as processing taxes were so made by petitioner to its vendors precludes attaching any importance to the omission from the contracts of any express promise to pay the processing taxes. The payments made by petitioner under the contracts which contained no promise to pay the processing taxes can not be distinguished so far as the right to refund is concerned, from the payments under the contracts which expressly obligated it to pay them." 109 F.2d at page 740.

Compare, also, G.C.M. 21540, Int.Rev. Bull.1939–39–10027, in which the Chief Counsel for the Bureau of Internal Revenue reached the same conclusion, observing: "In the instant case, the amounts involved were paid to processors under contracts existing prior to the effective date of the tax. The tax was added to the contract price on all of the invoices, even though some of the contracts did not permit the addition of the tax. As no tax was assessed against the M Company and no tax was paid by it to the United States, it is the opinion of this office that the M Company is not entitled to refund of such amounts."

Of significance, also, is Trunz Pork Stores, Inc. v. Rasquin, 2 Cir., 1938, 100 F.2d 399, holding that where sums have been collected by the Collector of Internal Revenue as processing taxes, as in the present case, the district courts of the United States are without jurisdiction to entertain suits for refunds thereof.

Furthermore, the statutory scheme appears to have contemplated only three types of Agricultural Adjustment Act taxes, namely, processing, compensating and floor stocks taxes, and not a fourth such as a "vendee's tax under Section 18". In this regard, the following excerpt from the Senate Report on the 1936 Revenue Bill would appear most relevant: "The invalidation of the Agricultural Adjustment Act by the decision in the Butler case has given rise to possible claims for approximately $960,000,000 which has been collected under that Act. This amount consists of approximately $850,000,000 in processing taxes; $98,000,000 in floor stocks taxes; $12,000,000 in compensating taxes. Processing taxes were paid by approximately 73,000 taxpayers; compensating taxes, by 75,000 taxpayers; and approximately 1,000,000 taxpayers paid floor stocks taxes." (Int.Rev.Bull.1939–1, pt. 2, p. 699.)

In Anniston Mfg. Co. v. Davis, 1937, 301 U.S. 337, 341, 57 S.Ct. 816, 818, 81 L.Ed.

1143, Chief Justice Hughes took a similar view in observing with regard to Title VII of the Revenue Act: "Sections 904 and 905 (7 U.S.C.A. §§ 646, 647) prescribed periods of limitation and provide for the jurisdiction of the District Courts, concurrent with the Court of Claims, for the recovery of amounts collected as floor stock and compensating taxes. Section 906 (7 U.S.C.A. § 648) prescribed the procedure on claims for refunds of processing taxes."

Plaintiff admittedly has no claim on account of floor stocks taxes or compensating taxes illegally collected. The tax burden allegedly borne by him by virtue of Section 18 of the Agricultural Adjustment Act appears to have been that of a processing tax and there has been no suggestion that a constitutional question is raised by the circumstance that the Revenue Act of 1936 fails to provide for refunds to all such vendees of processors.

It may be noted also that when plaintiff filed a claim for payment under Section 602 of the Revenue Act on account of floor stocks held for sale at the first moment of January 6, 1936, with regard to which his complaint indicates a recovery of $4,365, he took an affidavit on P.T. Form 71 that "he was not the processor or other person who paid or was liable for the tax with respect to the articles on which the claim is based". The foregoing quotation, of course, is in accord with the requirements of Section 602. Although the affidavit cannot, under any view, be regarded as settling plaintiff's status under Title VII of the Revenue Act, it is not entirely without interest to this court.

As is apparent from the foregoing, subsequent vendees bearing the tax burden have not entirely been forgotten by the Revenue Act. The plaintiff, himself, by virtue of Section 602 of the Act, has been able to recover all but a small portion of the amounts allegedly paid. The situation complained of arises only because of resales prior to January 6, 1936, in which plaintiff apparently failed to protect himself by including the tax burden in the resale price. If any inequities exist on that account it is a matter for congressional consideration, the jurisdiction of this court being restricted to that bestowed upon it by Congress.

Accordingly, defendant's motion to dismiss the complaint hereby is granted.