COMMISSIONER OF INTERNAL REVENUE v. DEPENDABLE PACKING CO.

DEPENDABLE PACKING CO. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 9279, 9280.

Circuit Court of Appeals, Seventh Circuit.
June 10, 1948.

Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key, Robert N. Anderson and Fred E. Youngman, Sp. Assts. to Atty. Gen., and Charles Oliphant, Raymond F. Brown and Lloyd C. Hooks, all of Washington, D. C., for Commissioner of Internal Revenue.

William R. Brown and W. Robert Brown, both of Chicago, Ill., for Dependable Packing Co.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Both the Commissioner of Internal Revenue (hereinafter called the Commissioner) and the claimant, Dependable Packing Company, a partnership, petition for review of adverse portions to them of a decision of the Tax Court. We shall consider them together. Initially Dependable filed a claim with the Commissioner for refund of taxes paid by it as a processor of hogs under the provisions of the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. This claim was disallowed in full. Pursuant to § 906 (g) of the Revenue Act of 1936, 7 U.S.C.A. § 648(g), Dependable filed a petition to review the Commissioner's disallowance with the Processing Tax Board of Review. This petition was transferred to the Tax Court, January 1, 1943, following the enactment of the Revenue Act of 1942, which abolished the Processing Tax Board of Review. The Tax Court in an opinion denied the Commissioner's motion to dismiss for lack of jurisdiction, 1 T.C. 861, and in its decision on the merits ordered that the claimant recover $12,454.81 from its claim for refund, as stipulated, of $129,035.22.

The pertinent facts are that Dependable commenced business operations in May, 1932, and continued to operate until August, 1935. The business consisted of wholesaling hog products derived from the purchase of live hogs, which had been slaughtered by Empire Packing Company for a fee, and the purchase of hog products for resale. It appears that Dependable filed monthly returns in its own name as the processor for the hogs slaughtered for it by Empire, and it paid the processing tax thereupon levied against it by checks drawn by Empire and payable to the Collector of Internal Revenue. Although the tax was in effect from November, 1933 to January, 1936, it appears that Dependable made only partial monthly payments or no monthly payments during the last six months of its partnership existence from February through August, 1935.

As a condition for the allowance of a refund § 902 of the Act, 7 U.S.C.A. § 644, required that the claimant prove that he bore the burden of the tax. The statutory evidentiary instruction in this regard was that the average margin per unit of the commodity processed be lower by the amount of tax during the tax period than that of the average margin before and after the tax. It defined the tax period as that period within which the claimant actually paid the processing tax, while the period before and after the tax was defined as the twelve months immediately preceding the effective date of the tax and the six months from February through July, 1936.

As Dependable was not in operation during the six months from November, 1931, to April, 1932, nor during the post-tax six months of February to July, 1936, it attempted to establish its margins pursuant to statutory instructions by the average prices paid by representative concerns engaged in a similar business and similarly circumstanced. Accordingly, the average wholesale prices for hogs and hog products in the Chicago market as determined by the United States Department of Agriculture was the schedule of computations relied upon by the claimant for this period when not in business. The computations for the prices it paid and received, while it was in operation, consisted of the claimant's own records which it also submitted. The Tax Court in effect rejected the claimant's evidence of the Department of Agriculture's bulletin by which claimant attempted to establish the average prices paid in the Chicago market by similar concerns for the twelve months it was not in operation. Claimant contends that this was error because it is a misconstruction of § 907(c) of the Act of 1936, 7 U.S.C.A. § 649(c).

The Commissioner contends that under the facts of the case, the Tax Court did not have jurisdiction, and even if it be assumed that it did, the Tax Court erred in its holding that the claimant had borne the burden of the taxes ordered to be recovered.

We shall consider only the jurisdictional issue, because we believe that it is the determinative factor in this case.

When the Supreme Court declared the taxing provisions of the Agricultural Adjustment Act unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, the Congress

enacted the Revenue Act of 1936, supra, which provided for the refund of the sums collected as processing taxes. The procedure for refund was subject to certain conditions which need not concern us here, because they do not relate to the question of jurisdiction. § 905 of the 1936 Act, 7 U.S.C.A. § 647, provided that the Court of Claims and the District Courts of the United States should have concurrent jurisdiction of the cases brought against the United States to recover refunds of the amounts paid as taxes under the Agricultural Adjustment Act, with the exception noted in § 906. Under § 906(a) of the 1936 Act, the Processing Tax Board of Review was given the exclusive jurisdiction to review the Commissioner's allowance or disallowance of "any amount paid or collected as processing tax, as defined in section 655 [§ 913] of this title * * *." An examination of § 913(b) discloses that the term "processing tax" as used in the 1936 Act "means any tax or exaction denominated a 'processing tax' under this chapter, but shall not include any amount paid or collected as tax with respect to the processing of a commodity for a customer for a charge or fee." Reinforced with this definition of what the term processing tax means, and more specifically, that it does not mean amounts paid as tax when the commodity has been processed for a customer for a fee, we are impelled to the conclusion that under the facts of this case the Tax Court, the successor to the Processing Tax Board of Review, did not have jurisdiction to entertain claimant's petition. Claimant concedes that no other construction of this jurisdictional exception is possible, but it contends that as it actually filed the returns in the belief that it was a custom processor and that it was assessed the tax thereby, it does come within the exception. A review of the applicable case law to the facts at bar does not substantiate this argument.

The facts as found by the Tax Court are that the claimant was not a processor of hogs during the period before and after the tax, and that it was not a processor of hogs during the tax period. It is conceded that the Empire Packing Company which slaughtered all of the hogs in this proceeding was a first domestic processor of hogs

under the taxing statute. From the pertinent regulations issued under the authority of the Secretary of the Treasury it is clear that it was the hog slaughterer, as the first domestic processor within the meaning of the Act who was solely liable for the tax. Fuhrman & Forster Co. v. Commissioner, 7 Cir., 114 F.2d 863, 866, 867.

In the Fuhrman case this court considered a factual situation comparable to the facts in the instant case. There the petitioner, a meat packer, engaged a slaughterer to kill its hogs for a charge. With the inception of the tax the petitioner paid the processing tax directly to the Collector of Internal Revenue for a short period but the payments were subsequently returned by the Collector with instructions that they be paid by the slaughterer. Thereafter, the slaughterer did pay the tax with money submitted to it by the petitioner. In affirming the decision which dismissed the petitioner's claim for refund, this court held that the petitioner, not being liable for the tax, was not entitled to a refund. See also Lindner Packing & Provision Co. v. Commissioner, 10 Cir., 118 F.2d 656.

Dependable argues, and the Tax Court in passing on the jurisdictional question held, that the Fuhrman case was distinguishable, because Dependable did file returns as if it were a first processor liable for the tax, and did pay the tax as a first processor. Without quarreling with the facts that the claimant believed it was liable for the tax, that it filed the returns as the first domestic processor and paid the taxes when assessed by the Collector on the basis of the returns filed, we are unable to say that the Fuhrman case is distinguishable. The fact that the claimant did believe it was liable for the tax and did pay the tax when it was assessed does not alter the law that the claimant in the instant case was not liable for the payment of the tax and therefore was not entitled to the refund. That there was laxity on the part of the Collector in not notifying the claimant of its position as he did in the Fuhrman case is obvious, but to conclude from the foregoing facts that the claimant "did not pay taxes of or for another," as the Tax Court did, 1 T.C. 862, is erroneous. Moreover, so far as Trunz Pork Stores v.

Rasquin, 2 Cir., 100 F.2d 399, decided in 1938 and cited by the Tax Court, stands for the proposition that the Revenue Act of 1936 is applicable to claims for refund of taxes paid under the Agricultural Adjustment Act, we are in accord, but in view of the Fuhrman case, subsequently decided by this court, we cannot agree that a petitioner not liable for the tax is precluded from seeking redress in the District Court.

The decision of the Tax Court is reversed and remanded with directions that claimant's petition be dismissed.